```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X

G&G CLOSED CIRCUIT EVENTS, LLC,

                        Plaintiff,
                                                    MEMORANDUM AND ORDER
            - against -
                                                    21 Civ. 6920 (NRB)
PRINCE COFIE, individually doing business
as ADINKRA BAR & RESTAURANT and P. COF
LLC, an unknown business entity doing
business as ADINKRA BAR & RESTAURANT,

                        Defendants.

----------------------------------------X
```
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

On September 15, 2018, the Adinkra Bar & Restaurant (the "restaurant") broadcasted a pay-per-view boxing match between Gennedy Golovkin and Saul Alvarez (the "match"). Plaintiff G&G Closed Circuit Events, LLC, a closed-circuit distributor of sports programming, brought this action against defendants P. Cof LLC, the owner and operator of the restaurant, and Prince Cofie, P. Cof LLC's principal. Plaintiff alleged that defendants broadcasted the match to the restaurant's patrons without paying for a commercial license, in contravention of 47 U.S.C. § 605 (the "Communications Act") and 47 U.S.C. § 553 (the "Cables Communications Policy Act", and together with the Communications Act the "piracy statutes"). Pending before the Court is plaintiff's motion for partial summary judgment. For the reasons

1

set forth below, plaintiff's motion for partial summary judgment is granted.

## BACKGROUND

**A. Procedural Background**

On August 17, 2021, plaintiff filed this action against defendants. See ECF No. 1 ("Compl."). Initially, defendants did not answer the Complaint and plaintiff obtained certificates of default against both defendants from the Clerk of Court on October 6, 2021. ECF Nos. 14-15. However, two weeks later, defendants' counsel appeared and moved to vacate the certificates of default, which application the Court granted. ECF Nos. 16-20. On November 21, 2021, defendants answered the Complaint and asserted six affirmative defenses.[1] ECF No. 21 ("Answer"). On January 11, 2022, the Court held an initial pretrial conference and thereafter, the parties began discovery.[2]

After numerous attempts by the Court to reach the parties for updates regarding the status of discovery and whether any pre-trial motions would be filed, ECF No. 46, on September 1, 2023,

---

[1] Defendants asserted the following affirmative defenses: (1) the Complaint fails to state a claim upon which relief can be granted; (2) plaintiff could not demonstrate injury, impact, or damage as a result of any of defendants' actions; (3) defendants did not infringe the rights cited in the Complaint; (4) recovery is barred by waiver and/or estoppel; (5) defendants had no knowledge of the infringing activities; and (6) the claims are barred by the doctrine of acquiescence. Answer at 4-5.

[2] The Court also held an unsuccessful remote settlement conference with the parties in April 2022.

plaintiff filed the instant motion. ECF No. 49 ("Mot."). On October 30, 2023, defendants filed their opposition to plaintiff's motion. ECF No. 52 ("Opp."). On November 10, 2023, plaintiff filed its reply. ECF No. 55 ("Reply").

### B. Local Rule 56.1 Statements

Before providing the factual background, the Court is compelled to address defendants' inadequate Local Rule 56.1(b) submission. Local Rule 56.1 requires that a party moving for summary judgment submit "a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried," Local R. 56.1(a), and for the party opposing summary judgment to submit "a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party," Local R. 56.1(b). Each statement "will be deemed to be admitted for purposes of the motion unless specifically controverted." Local R. 56.1(c). In addition, "[e]ach statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." Local R. 56.1(d). These rules governing summary judgment "are essential tools for district courts, permitting them to efficiently decide summary judgment motions by relieving them of the onerous task of hunting through voluminous

N/A

N/A

N/A

records without guidance from the parties." N.Y. Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc., 426 F.3d 640, 649 (2d Cir. 2005) (internal quotation marks omitted).

As plaintiff notes in its Reply, defendants' Local Rule 56.1 Counterstatement merely states that a "statement is disputed" or that "defendants are without sufficient information to determine the accuracy of this statement," with general citations to their responses to plaintiff's interrogatories.[3] See ECF No. 52-1 ("56.1 Counterstatement"). This is simply unacceptable. "Responses of this nature, which do not point to any evidence in the record that may create a genuine issue of material fact, do not function as denials, and will be deemed admissions of the stated fact." Senno v. Elmsford Union Free Sch. Dist., 812 F. Supp. 2d 454, 458 n.1 (S.D.N.Y. 2011) (citing cases); see also Feis v. United States, 394 F. App'x 797, 799–800 (2d Cir. 2010) (summary order).

The Court has "considerable discretion in fashioning a remedy to address" these failures. Emanuel v. Griffin, No. 13 Civ. 1806 (JMF), 2015 WL 1379007, at *2 (S.D.N.Y. Mar. 25, 2015). "[W]here there are no citations or where cited materials do not support

---

[3] Plaintiff argues that defendants' responses to plaintiff's interrogatories are neither properly sworn nor notarized, and therefore may not be relied upon to oppose summary judgment. Reply at 2-3. Plaintiff is correct, since the responses are neither notarized nor subscribed to under penalty of perjury as required under 28 U.S.C. § 1746, they "cannot be relied upon to oppose summary judgment." Chen v. Shanghai Cafe Deluxe, Inc., No. 17 Civ. 2536 (DF), 2019 WL 1447082, at *10 (S.D.N.Y. Mar. 8, 2019).

4

factual assertions in the [Rule 56.1 statements], the Court is free to disregard the assertion." Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 73 (2d Cir. 2001) (quoting Watt V. N.Y. Botanical Garden, No. 98 Civ. 1095 (BSJ), 2000 WL 193626, at *1 n.1 (S.D.N.Y. Feb. 16, 2000)) (internal alterations omitted). Thus, the Court will not consider any unsupported alleged facts or assertions.

The Court is, however, mindful that "[t]he local rule does not absolve the party seeking summary judgment of the burden of showing that it is entitled to judgment as a matter of law, and [that] Local Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record." Holtz, 258 F.3d at 74. As a consequence, rather than "streamlin[ing] the consideration of [the pending] summary judgment motions" as the local rule intended, id., the net effect of defendants' failure to submit a proper Local Rule 56.1 Counterstatement is to impose upon the Court the added burden of combing through the record to assure itself that the facts asserted by the moving party are supported by admissible evidence.

**C. Factual Background[4]**

---

[4] The following facts are derived from Plaintiff's Local Civil Rule 56.1 Statement (ECF No. 49-5, "Pl. 56.1") and the documents cited therein. Defendants' reliance on their unsworn answers to plaintiff's interrogatories to create purported disputes regarding any promotional advertising of the match by defendants, the number of people present at the restaurant on that night, whether there was any cover charge to enter the restaurant that night, and


Plaintiff holds the exclusive commercial exhibition licensing rights to the match, which was broadcasted nationwide on September 15, 2018 "via satellite uplink and was subsequently re-transmitted to cable systems and satellite systems via satellite signal." Pl. 56.1 ¶¶ 1, 3-4 (citing ECF No. 49-2, the affidavit of Nicholas Gagliardi, plaintiff's President ("Gagliardi Affidavit")). Any commercial establishment that wishes to show a match must obtain a sublicense from plaintiff, the exclusive holder of these rights, by paying a sublicense fee. Pl. 56.1 ¶¶ 5, 12.

On September 11, 2018, the restaurant's Facebook page advertised the match, which was shown to patrons at the restaurant on September 15, 2018. Pl. 56.1 ¶¶ 14, 14(a). According to the notarized affidavit of investigator Gary Joseph, submitted in support of plaintiff's motion, on September 15, 2018, the restaurant had a $20 cover charge to enter, there were approximately 50 people inside, Mr. Joseph was served a Heineken drink, and the match was displayed on two televisions.[5] ECF No. 49-6, "Joseph Affidavit." Defendants do not dispute that the match was shown at the restaurant, see ECF No. 49-9 ("Pl.'s Requests for

---

whether alcoholic drinks were served is wholly inadequate and ineffective. See 56.1 Counterstatement ¶¶ 11, 13-20.

[5] Plaintiff's submission states that the statement was sworn by "James Osgood," Pl. 56.1 ¶ 15, but the sworn affidavit submitted in support of plaintiff's motion shows that the investigator was Gary Joseph and Mr. Osgood's name appears as the notary. Thus, the Court will refer to this submission as the Joseph Affidavit.

Admissions and Def.'s Responses") ¶ 13, but claim, without any evidence, that defendants allowed a friend to use the restaurant for a birthday party, see Opp. at 2.

Defendants did not pay plaintiff a sublicense fee to broadcast the match at the restaurant. Pl. 56.1 ¶ 12. However, defendants admit that Mr. Cofie ordered the match from his cable company, Pl.'s Requests for Admissions and Def.'s Responses ¶ 9, and a Verizon bill addressed to "COFIE PRINCE" dated September 30, 2018 shows the purchase of the match, see ECF No. 49-13 (emphasis in original).

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Nick's Garage, Inc. v. Progressive Cas. Ins. Co., 875 F.3d 107, 113-14 (2d Cir. 2017) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "Factual disputes that are irrelevant or unnecessary will not be counted." Anderson, 477 U.S. at 248.

"The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment . . . and in assessing the record to determine whether there is a genuine issue as to a

material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004) (internal citations and quotations omitted). Accordingly, "the moving party must make a prima facie showing that it is entitled to summary judgment." Celotex Corp. v. Catrett, 477 U.S. 317, 331 (1986).

"The party opposing summary judgment may defeat the motion only by asserting defenses that raise genuine issues of material fact." Id. at *4 (internal citations and quotation marks omitted). "Conclusory allegations will not suffice to create a genuine issue." Delaware & Hudson Ry. Co. v. Consol. Rail Corp., 902 F.2d 174, 178 (2d Cir. 1990). There must be more than a "scintilla of evidence in support of the [non-movant's] position; there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 252. In other words, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "If no rational fact finder could find in the non-movant's favor, there is no genuine issue of material fact, and summary judgment is appropriate." Citizens Bank of Clearwater v. Hunt, 927 F.2d 707, 710 (2d. Cir. 1991).

**DISCUSSION**

**A. Liability of P. Cof LLC**

The Communications Act protects "any person aggrieved . . . includ[ing] any person with propriety rights," 47 U.S.C. § 605(d)(6), against "the interception of cable-borne, as well as over-the-air, pay television where cable-borne transmissions originate as satellite transmissions," Joe Hand Promotions, Inc. v. Infante, No. 20 Civ. 1650 (NRB), 2020 WL 6063796, at *1 (S.D.N.Y. Oct. 14, 2020) (citation omitted). This includes "unauthorized divulgence or use of [satellite] communications." See Joe Hand Promotions, Inc. v. Side Pocket Billiards, LLC, No. 16 Civ. 858(LJV) (HKS), 2023 WL 5352767, at *3 (W.D.N.Y. Aug. 3, 2023), report and recommendation adopted, No. 16 Civ. 858 (LJV) (HKS), 2023 WL 5348874 (W.D.N.Y. Aug. 21, 2023) (quotations marks and citations omitted). Similarly, Section 553(a)(1) of the Cable Communications Policy Act prohibits intercepting, or assisting "in intercepting or receiving any communications service offered over a cable system." 47 U.S.C. § 553(a)(1). "[I]n some circumstances, such as when television programming is transmitted over both cable and satellite mediums, the same conduct will warrant liability under both statutes." G & G Closed Cir. Events, LLC v. Perez, No. 21 Civ. 6210 (KPF), 2023 WL 1380314, at *4 (S.D.N.Y. Jan. 31, 2023), reconsideration denied, No. 21 Civ. 6210 (KPF), 2023 WL 3600987 (S.D.N.Y. May 23, 2023) (citing Cablevision Sys. N.Y.C.

9

Corp. v. Lokshin, 980 F. Supp. 107, 113 (E.D.N.Y. 1997)).  However, "[w]here, as here, a plaintiff asks for relief under both sections 605 and 553, courts award damages only under section 605." G & G Closed Cir. Events, LLC v. Uvas Tapas Bar & Grill Corp., No. 14 Civ. 4194 (NRB), 2014 WL 4555650, at *1 (S.D.N.Y. Sept. 12, 2014).

Here, plaintiff has demonstrated that: (1) it holds the exclusive rights to license the match to commercial establishments, Pl. 56.1 ¶ 3; (2) the match originated via satellite transmission and was retransmitted to cable and satellite systems, Id. ¶¶ 3-4; (3) the match was shown at the restaurant, Pl.'s Requests for Admissions and Def.'s Responses ¶ 13; and (4) defendants did not purchase a license from plaintiff, Pl. 56.1 ¶ 12.[6]  Taken together, plaintiff has established its prima facie case against P. Cof, LLC.

In response, defendants assert two arguments in an effort to avoid the restaurant's liability.[7]  First, defendants argue that plaintiff "has not provided sufficient evidence of the source of the program [d]efendants allegedly used." Opp. at 5.  However,

---

[6] In addition, plaintiff has shown that the match was purchased from a Verizon account in Mr. Cofie's name.  At least one other court in this Circuit has relied on evidence that a restaurant's owner purchase of a pay-per-view event on a residential cable account sufficient to find an establishment liable under the Communications Act.  See Side Pocket Billiards, LLC, 2023 WL 5352767, at *3.

[7] In addition to these arguments, defendants also argue that plaintiff can only recover under one statute and, without pointing to any evidence, assert that defendants did not charge a cover charge to enter the restaurant or drink premiums on September 15, 2018. Opp. at 5. As plaintiff notes, these arguments are relevant to damages, but not defendants' liability.

10

the notarized affidavit of plaintiff's president clearly states that the match originated "via satellite uplink and [was] subsequently re-transmitted to cable systems and satellite systems via satellite signal.  If a commercial establishment is authorized by [p]laintiff to receive the [match], the establishment is provided with the electronic decoding equipment and the satellite coordinates necessary to receive the signal, or the establishment's programming provider is notified to unscramble the reception of the Program for the establishment, depending upon the establishment's equipment and provider."  Gagliardi Affidavit ¶ 12.  Second, defendants assert, without pointing to any evidence, that there was no knowing interception, they had no intent to infringe, and the restaurant was provided to a friend for a birthday.  However, Section 605 "is a 'strict liability' statute, in that its violation results in liability regardless of the intent of the violator."  Joint Stock Co. "Channel One Russia WorldWide" v. Russian TV Co., No. 18 Civ. 2318 (LGS), 2021 WL 4341053, at *4 (S.D.N.Y. Sept. 22, 2021).

**B. Liability of Prince Cofie**

An individual can be liable for a violation of the piracy statutes where there is a showing of contributory infringement, by authorizing the violation, or vicarious liability, by having "a right and ability to supervise the infringing activities and had an obvious and direct financial interest in the exploitation of

11

[the] copyrighted materials." J & J Sports Prods., Inc. v. Usman, No. 17 Civ. 5335 (NG) (VMS), 2019 WL 6777387, at *2 (E.D.N.Y. Dec. 12, 2019).[8]  Here, plaintiff has shown that Mr. Cofie: (1) is the sole owner, officer, and principal of P. Cof LLC; (2) is listed as the principal on the restaurant's liquor license; (3) had an obvious and direct financial interest given that the restaurant he owned through P. Cof LLC had a cover charge for patrons on the night of the match; and (4) admits that he purchased the match on his residential account.  Plaintiff maintains that, taken together, it has met its burden to demonstrate that Mr. Cofie had the "right and ability to supervise the infringing activities and had an obvious and direct financial interest in the exploitation of [the] copyrighted materials." Id.

In response, defendants argue that (1) plaintiff has not proven that Mr. Cofie was present and authorized the violation; (2) ownership does not mean supervisory control or a financial stake; (3) "a large number of patrons" were not present at the establishment, unlike in other cases finding individual liability by other courts in this Circuit, see J & J Sports Prods., Inc. v.

---

[8] Defendants argue that plaintiff must show that Prince Cofie is the alter ego of defendant P. COF, LLC to be held liable for the Communications Act violations. However, defendants support their argument with only a citation of a case from the Northern District of Ohio, J & J Sports Productions, Inc. v. KSD, Inc., Case No. 3:12 Civ. 1873 (N. D. Ohio Sept. 18, 2014), and ignore the law that an individual can contribute to the infringement or be vicariously liable for the infringement.

LX Food Grocery Inc., No. 15 Civ. 6505 (NG) (GPK), 2016 WL 6905946, at *3 (E.D.N.Y. Nov. 23, 2016); and (4) defendant derived nothing from the match because it was used for a friend's birthday party. First, plaintiff need not prove that Mr. Cofie was present to find him vicariously liable.  Second, while defendants are correct that mere ownership does not necessarily mean that Mr. Cofie had financial control, "courts have looked to whether the plaintiff showed direct financial gain, such as a cover charge on the night of the event, . . . or strong indirect evidence of financial gain, such as a bar hosting a large number of patrons, who would presumably purchase drinks during the broadcast." Usman, 2019 WL 6777387, at *3 (quotation and punctuation marks omitted).  Indeed, courts in this Circuit have found indirect evidence of financial gain where there were far fewer than 50 patrons in the establishment.  See, e.g., J & J Sports Prods., Inc. v. Ahuachapan Corp., 422 F. Supp. 3d 652, 659 (E.D.N.Y. 2019) (20 to 25 patrons); J & J Sports Prods., Inc. v. Boyd, No. Civ. 17-6822(ENV) (AYS), 2018 WL 7113870, at *3 (E.D.N.Y. Nov. 16, 2018), report and recommendation adopted, No. 2:17 Civ.6822 (ENV) (AYS), 2019 WL 316704 (E.D.N.Y. Jan. 24, 2019) (at most 29 patrons).  Finally, as discussed above, defendants' position that the restaurant was provided to a friend for a birthday party is merely a bare assertion and is not supported by any admissible evidence such as an affidavit from the friend.  Accordingly, plaintiff's motion for

partial summary judgment on liability against Mr. Cofie is also granted.

**CONCLUSION**

For the foregoing reasons, plaintiff's motion for partial summary judgment on liability is granted. Plaintiff did not submit support for a claim of damages or attorneys' fees as part of its motion papers. Accordingly, the issue of damages is not properly before the Court.

However, in its cover letter on the present motion, plaintiff states that it requests $110,000 in statutory damages for the violation of the Communications Act and $60,000 in statutory damages for the violation of the Cables Communications Policy Act. The Court encourages the parties to consider that the undersigned has previously noted, in a similar context, that "courts may look to a variety of factors, including the market value of the rights infringed and the revenue lost by plaintiff -- i.e., the unpaid licensing fee -- as well as the deterrent effect that damages might have on the infringer and third parties." G&G Closed Cir. Events, LLC v. Batista, No. 20 Civ. 5073 (NRB), 2021 WL 293150, at *2 (S.D.N.Y. Jan. 28, 2021). The undersigned has also considered the feasibility for an establishment to pay the licensing fee, based on the low cover charge and number of attendees present. See Joe Hand Prods., Inc. v. Rossi, No. 20 CIV. 6534 (NRB), 2022 WL 3903596, at *3 (S.D.N.Y. Aug. 30, 2022), modified on

reconsideration sub nom. Joe Hand Promotions, Inc. v. Rossi, No. 20 Civ. 6534 (NRB), 2023 WL 419174 (S.D.N.Y. Jan. 26, 2023)

Finally, the Court issues this decision with the hopes that the parties will once again consider settlement. The Court recognizes that without consequences, others may feel unrestrained to broadcast content in a commercial setting without paying for a license. However, in the instant case, the restaurant is out of business, and, although this Court finds that Mr. Cofie is individually liable as a matter of law, the parties are reminded that if a judgment is beyond an individual's capacity to pay, initially or over time, the judgment may force the individual defendant to file for bankruptcy. Given that this debt would presumably be dischargeable in bankruptcy, this may result in no monetary benefit whatsoever for plaintiff.

The Clerk of the Court is respectfully instructed to terminate the motion pending at ECF No. 49.

**SO ORDERED.**

Dated:   April 3, 2024
         New York, New York

_____
NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE