```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
G&G CLOSED CIRCUIT EVENTS, LLC,
                    Plaintiff,

    - against -                              MEMORANDUM AND ORDER

PRINCE COFIE, individually d/b/a
ADINKRA BAR & RESTAURANT and                 21 Civ. 6920 (NRB)
P. COF LLC, an unknown business
entity d/b/a ADINKRA BAR & RESTAURANT,

                    Defendants.
----------------------------------------X
```

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Plaintiff G&G Closed Circuit Events, LLC, the exclusive rights holder of a pay-per-view boxing match, brought this action under 47 U.S.C. §§ 553 and 605 against defendants P. Cof LLC, the owner and operator of the Adinkra Bar & Restaurant (the "Restaurant"), and Prince Cofie, P. Cof LLC's principal, for displaying the boxing match on two televisions at the Restaurant without the requisite commercial license. Currently before the Court is plaintiff's request for damages and attorneys' fees. See ECF No. 59. For the reasons below, we award plaintiff a total of $10,952.50, consisting of $5,600.00 in statutory damages and $5,352.50 in attorneys' fees.

## BACKGROUND

### A. Procedural Background

On April 3, 2024, this Court granted plaintiff's motion for partial summary judgment on the issue of liability. See ECF No.

1

56. The parties provided subsequent briefing on damages and attorneys' fees, with plaintiff filing its opening brief on August 27, 2024, ECF No. 59 ("Brief"), defendants submitting their opposition on October 30, 2024, ECF No. 62 ("Opp."), and plaintiff providing its reply on November 6, 2024, ECF No. 63 ("Reply").

### B. Factual Background

The facts relevant to the determination of damages are as follows. On September 11, 2018, the Restaurant advertised on its Facebook page that it would be broadcasting a pay-per-view boxing match between Gennedy Golovkin and Saul Alvarez (the "match"). See ECF No. 56 at 1. On September 15, 2024, the Restaurant displayed the match on two televisions to approximately fifty paying patrons. Id. at 6–7.

For a commercial venue like the Restaurant to lawfully show the match, it was required to procure a sublicense from plaintiff for a fee. Id. at 6. Defendants did not do this. Id. Instead, Mr. Cofie ordered the match through his personal cable account and displayed the event at his restaurant. Id. at 6–7.

## LEGAL STANDARD

Section 605 of the Communications Act protects against "the interception of cable-borne, as well as over-the-air, pay television where cable-borne transmissions originate as satellite transmissions." Top Rank, Inc. v. Ortiz, No. 01 Civ. 8427, 2003 WL 1960211, at *2 (S.D.N.Y. Mar. 27, 2003) (citing Cablevision

Sys. New York City Corp. v. Lokshin, 980 F. Supp. 107, 112 (E.D.N.Y. 1997)). Section 605 provides for penalties "of not less than $1,000 or more than $10,000, as the court considers just" for each violation of section 605(a), 47 U.S.C. § 605(e)(3)(c)(i)(II), and for an additional amount not exceeding $100,000 where the violations were committed "willfully and for purposes of direct or indirect commercial advantage or private financial gain," id. § 605(e)(3)(c)(ii). With respect to willfulness, "the question for the court is whether the defendant has exhibited disregard for the governing statute and an indifference for its requirements." Joe Hand Promotions, Inc. v. Levin, No. 18 Civ. 9389, 2019 WL 3050852, at *4 (S.D.N.Y. July 12, 2019) (internal quotation marks and citation omitted). In addition, Section 605 directs the Court to award "full costs," including reasonable attorneys' fees, "to an aggrieved party who prevails." 47 U.S.C. § 605(e)(3)(b)(iii).

"District courts enjoy wide discretion in setting statutory damages." Castillo v. G&M Realty L.P., 950 F.3d 155, 171 (2d Cir. 2020) (citation omitted). In the Second Circuit, courts employ the Bryant approach "[w]hen determining the amount of statutory damages to award for copyright infringement" and will "consider: (1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing

3

evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties." Bryant v. Media Right Productions, Inc., 603 F.3d 135, 144 (2d Cir. 2010) (citing N.A.S. Impor. Corp. v. Chenson Enter., Inc., 968 F.2d 250, 252-53 (2d Cir.1992)); see also 3 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 14.04(B), at 14-41 (1991).  Overall, when awarding statutory damages, a court should not merely seek to "compel[] restitution of profit and reparation for injury" but should also aim to "discourage wrongful conduct" in the future. F.W. Woolworth Co. v. Contemporary Arts, Inc., 344 U.S. 228, 233 (1952).

## DISCUSSION

### A. Statutory Damages

Plaintiff asks this Court to assess damages using either a licensing fee or per-person method.  Under the former approach, plaintiff seeks (1) $5,600 in baseline statutory damages, which reflects a two-times multiplier of the original $2,800 commercial fee for the match; plus (2) enhanced statutory damages of $14,000, or two and one-half times statutory damages for defendants' purportedly willful conduct. See Brief at 3-4.  Under the per-person method, plaintiff advocates for (1) baseline statutory damages of $5,000, which reflects a $100 fee for each of the 50 patrons estimated to be in attendance; plus (2) enhanced statutory damages of $12,500, which is two and one-half times statutory damage.  Brief at 7.  Since plaintiff's proposed damages

calculation methods are naturally embedded in the Bryant approach, the Court proceeds with Bryant's multi-factor analysis.

With respect to the first Bryant factor, plaintiff has not sufficiently established that defendants willfully infringed its copyright. Copyright infringement is "willful" if the plaintiff shows "(1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of 'reckless disregard' for, or 'willful blindness' to, the copyright holder's rights." Island Software & Computer Services, Inc. v. Microsoft Corp., 413 F.3d 257, 263 (2d Cir. 2005) (citations omitted). A defendant's willfulness "need not be proven directly but may be inferred from the defendant's conduct." N.A.S. Import, Corp., 968 F.2d at 252. Here, there is neither direct nor circumstantial evidence of willfulness. This entire litigation is premised upon a "single event aired at [a] small establishment [in] 2018, which permanently closed its doors years ago." Opp. at 3. The venue itself "did not have any employees" on the date of the violation, nor did it have any satellite service or devices attached to its televisions. Id. at 2. And while the venue was technically "in operation" at the time of the match, it "was not open consistently" because Mr. Cofie "was an active member of the military, and had periods of time that he was out of the country." Id. Moreover, there is "zero evidence of repeated [licensing] violations by [d]efendants," who have "never been accused of any

kind of signal theft or the like by any entity." Id. at 2-3. While it is true that defendants "required a $20.00 cover charge for admission" and advertised that it would be showing the fight, see Brief at 4, these actions do not, standing alone, show that defendants willfully sought to flout or undermine the tenets of the Communications Act.

Next, we turn to the second and third Bryant factors. To the extent possible, an award of "statutory damages should bear some relation to actual damages suffered." RSO Records, Inc. v. Peri, 596 F. Supp. 849, 862 (S.D.N.Y. 1984). It is thus common for courts to tether a statutory damages award to the copyright owner's loss of the fair market value of the licensing fees. See On Davis v. The Gap, Inc., 246 F.3d 152, 166 (2d Cir. 2001). Here, defendants' cost savings -- the inverse of plaintiff's lost revenue -- reflect the $2,800 commercial fee it should have paid to lawfully obtain a sublicense for the match. See Brief at 4. And while there is evidence that defendants earned at least $1,000 in revenue from charging the approximately fifty patrons in attendance a $20 cover charge, see Brief at 4, "[d]efendants had no profits" to show for the night, see Opp. at 4.

Next, we turn to the fourth Bryant factor. The Court may award statutory damages in an amount that will "further the Copyright Act's dual objectives of compensating copyright owners for past infringement and deterring future infringement."

6

Getaped.com, Inc. v. Cangemi, 188 F. Supp. 2d 398, 403 (S.D.N.Y. 2002). The Court recognizes that without consequences, others may feel unrestrained to broadcast content in a commercial setting without paying for a license. In the instant case, however, defendants' business has shuttered, and there are "no plans to establish a similar business in the future." Opp. at 4. Thus, there is no need for specific deterrence. Further, the Court is confident that its statutory damages assessment will, on its own, further the ends of general deterrence.

Finally, both prongs five and six of the Bryant analysis cut against a stiff damages award. Defendants did not default, as is frequently the approach of defendants in this type of case. See e.g., G&G Closed Cir. Events, LLC v. Batista, No. 20 Civ. 5073 (NRB), 2021 WL 293150, at *2 (S.D.N.Y. Jan. 28, 2021); see also Joe Hand Prods., Inc., 2022 Wl 3903596, at *3. Rather, defendants have fully engaged in this litigation by retaining counsel, filing an answer, attempting settlement, and briefing motions. See Opp. at 5.

In consideration of the foregoing, we find a statutory damages award of $5,600, or two times the licensing fee, to be appropriate. See J&J Sports Prods., Inc. v. Ramirez, No. 17 CIV. 6926 (RWS), 2018 WL 1961107, at *2 (S.D.N.Y. Apr. 9, 2018) ("Doubling the licensing fee results in more proportional damages."). Further, the Court declines to award enhanced statutory damages as there is

insufficient evidence of willfulness.  See J & J Sports Prods., Inc. v. Mar Y Las Estrellas Rest. Corp, No. 17 Civ. 1190 (MKB) (ST), 2018 WL 4583489, at *7 (E.D.N.Y. Sept. 25, 2018) ("Mar Y Las Estrellas appears to be a small business for which statutory damages will provide a sufficient penalty.").  As discussed above, there is no need here for specific deterrence, and the award is sufficient for general deterrence.  See Joe Hand Promotions, Inc. v. Hernandez, No. 03 Civ. 6132 (HB), 2004 WL 1488110, at *5 (S.D.N.Y. June 30, 2004) (noting in determining damages that "the value of deterrence must be balanced against the inequity of imposing heavy financial burdens on small businesses.  The sting of an enhanced award should not be greater than deterrence requires and fairness allows.").

### B. Attorneys' Fees and Costs

Plaintiff seeks attorneys' fees and costs in the amount of $5,352.50.  ECF 59-3 at 3, Ex. 1.  The requested fee reflects 13.85 hours of attorney time billed at $350 per hour, id. at 4, and 5.05 hours of work done by a paralegal for a total amount of $505, id.

While "[t]here is no precise rule or formula" for determining whether a request for attorneys' fees is reasonable, Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 (1994), the amounts requested by plaintiff are commensurate with the individual billing rate stated in the declaration submitted by plaintiff's attorneys, ECF No. 59-3 at ¶ 5, and the amount of work conducted in this case.  The Court

finds plaintiff's fees to be reasonable. Plaintiff may therefore recover the full amount of its attorneys' fees, $5,352.50, under Section 605(e)(3)(B)(iii).

## CONCLUSION

For the foregoing reasons, we award damages in the amount of $5,600.00 for defendants' copyright violation, plus an additional $5,352.50 in attorneys' fees. The Clerk of the Court is respectfully directed to enter judgment in favor of plaintiff and close this case.

**SO ORDERED.**

Dated:   November 22, 2024
         New York, New York

_____
NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE